UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

KEITH ELLIS                              :
                                         :
          v.                             :        C.A. No. 06-21A
                                         :
JO ANNE B. BARNHART,                     :
Commissioner of the Social Security      :
Administration                           :

**MEMORANDUM AND ORDER**

This matter is before the Court for judicial review of a final decision of the Commissioner

of the Social Security Administration ("Commissioner") denying Disability Insurance Benefits

("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("Act"), 42

U.S.C. § 405(g).  Plaintiff filed his Complaint on January 17, 2006 seeking to reverse the decision

of the Commissioner or, in the alternative, to remand for further proceedings.[1]  Plaintiff filed a

Motion for Summary Judgment on September 26, 2006.  The Commissioner filed a Motion for an

Order Affirming the Decision of the Commissioner on October 31, 2006.

With the consent of the parties, this case has been referred to me for all further proceedings

and the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.  Based upon

my review of the record, independent legal research, and the legal memoranda filed by the parties,

I find that there is substantial evidence in the record to support the Commissioner's decision and

findings that Plaintiff is not disabled within the meaning of the Act.  Consequently, I order that the

---

[1]  In its brief, the Government erroneously argues that Plaintiff only seeks reversal and an award of benefits, and has not requested remand for additional proceedings and has thus "waived" such request.  Document No. 11 at p. 11.  The Government's representation is incorrect.  It is plain that Plaintiff's Motion "alternatively" seeks remand for "further proceedings."  Document No. 10 at pp. 1 and 17.

Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 11) be DENIED and that Plaintiff's Motion for Summary Judgment (Document No. 10) be GRANTED as to his alternative request for a remand for further proceedings.

## I.    PROCEDURAL HISTORY

Plaintiff filed applications for SSI and DIB on June 12, 2002, alleging disability as of June 12, 2002. (Tr. 136-138). The applications were denied initially on November 20, 2002 (Tr. 81-85) and on reconsideration on March 7, 2003. (Tr. 87-90). On November 2, 2004, a hearing was held before Administrative Law Judge Hugh S. Atkins (the "ALJ"), at which Plaintiff, represented by counsel, a vocational expert ("VE") and a medical expert ("ME") appeared and testified. (Tr. 41-63). On February 2, 2005, the ALJ issued a decision finding that Plaintiff was not disabled. (Tr. 12-21). Plaintiff filed a timely appeal to the Appeals Council. (Tr. 11, 339-340). On November 18, 2005, the Appeals Council denied Plaintiff's request for review. (Tr. 7-9). A timely appeal was then filed with this Court.

## II.    THE PARTIES' POSITIONS

Plaintiff argues that the ALJ's decision to deny Plaintiff disability benefits is not supported by the substantial evidence in the record. The Commissioner disputes Plaintiff's claims and argues that there is substantial evidence which supports the final decision of the Commissioner that Plaintiff failed to meet his burden of showing that he was disabled within the meaning of the Act.

## III.    THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more

than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (*per curiam*); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact.  Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law.  Nguyen v. Chater, 172 F.3d  31, 35 (1st Cir. 1999) (*per curiam*); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991).  Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled.  Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences.  Seavey, 276 F.3d at 8.  To remand under sentence four, the court must either find that the Commissioner's

-3-

decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim.  Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence four remand may be appropriate to allow her to explain the basis for her decision.  Freeman v. Barnhart, 274 F.3d 606, 609-10 (1st Cir. 2001).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council).  After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction.  Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g).  To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level.  See Jackson v. Chater, 99 F.3d 1086, 1090-92 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant.  Jackson, 99 F.3d at 1095.  With a sentence six remand, the parties must return to the court after remand to file modified findings of fact.  Id.  The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.  Id.

## IV.   DISABILITY DETERMINATION

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(I), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A.   Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d).  If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).  The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported

by objective medical evidence or is wholly conclusory.  See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-76 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).  When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion.  20 C.F.R § 404.1527(d).  However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  See 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  20 C.F.R. § 404.1527(e).  The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's RFC (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner.  20 C.F.R. § 404.1527(e).  See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

**B.      Developing the Record**

The ALJ has a duty to fully and fairly develop the record.    Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991).  The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained.  See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987).  The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel.  Id.  However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty.  See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

**C.      Medical Tests and Examinations**

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986).  In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision.  Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

### D.     The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability.  <u>See</u> 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, she is not disabled.  20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering her RFC, age, education and past work) prevent her from doing other work that exists in the national economy, then she is disabled.  20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five.  <u>Wells v. Barnhart</u>, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B).  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. <u>Davis v. Shalala</u>, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act.  Seavey, 276 F.3d at 5.  The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits.  Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(I)(3), 423(a), (c).  If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability.  Id.

### E.    Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  Seavey, 276 F.3d at 5.  In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant.  Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989).  This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids").  Seavey, 276 F.3d at 5.  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors.  Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills.  Nguyen, 172 F.3d at 36.  In almost all of such cases, the

Commissioner's burden can be met only through the use of a vocational expert.  Heggarty, 947 F.2d at 996.  It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy.  See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981).  In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1.    Pain

"Pain can constitute a significant non-exertional impairment."  Nguyen, 172 F.3d at 36.  Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

> (1) The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);

(3) Type, dosage, effectiveness, and adverse side-effects of any pain medication;

(4) Treatment, other than medication, for relief of pain;

(5) Functional restrictions; and

(6) The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986).  An individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

### 2.     Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  Rohrberg, 26 F. Supp. 2d at 309.  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  See Frustaglia, 829 F.2d at 195.  The failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true.  See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding."  Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

## V.    APPLICATION AND ANALYSIS

Plaintiff was forty years old at the time of the ALJ hearing held on November 2, 2004.  (Tr. 16, 139).  Plaintiff has a ninth-grade education (Tr. 20, 74) with past relevant work as a roofer.  (Tr. 19).  Plaintiff alleges disability as of June 12, 2002 as a result of back and bladder problems.

Plaintiff underwent laparoscopic surgery for a fusion of his lumbar spine in October 1997, and sustained injury to his urethra during the procedure, requiring surgical repair.  (Tr. 217, 231, 242, 256, 287).  A December 29, 1998 MRI study of Plaintiff's lumbar spine revealed no abnormal findings of significance.  (Tr. 201).

A urologic surgeon, Dr. Stephen Schiff, has treated Plaintiff from at least March 1999 through at least October 2003 (Tr. 3; 199; 236-259; 285-295).  A March 1999 diagnostic imaging of Plaintiff's ureter and bladder showed a post void residual, compatible with a diagnosis of partial bladder outlet obstruction.  (Tr. 199).  Plaintiff's early treatment with Dr. Schiff produced substantial improvement in his voiding mechanics.  (Tr. 259).  An ability to void normally, at least in part, was noted in August 1999 and February 2000; Plaintiff achieved an empty bladder with catheterization. (Tr. 256-257, 259).  Plaintiff was self-catheterizing at least three times a day in July 2000, but was also able to void on his own in July and August 2000.  (Tr. 253-254).  It was noted that Plaintiff "does not void well on his own" and he was instructed "to be rigorous in continuing [to catheterize] to try and keep his bladder as empty as possible." (Tr. 254).  A renal ultrasound and blood tests done in October 2001 were normal and diagnostic testing showed no abnormality except for the prior surgery.  (Tr. 248).  In November 2001, Plaintiff was assisting his poor bladder emptying with medication and catheterization.  (Tr. 246).  In June 2002, Plaintiff reported an increase in the number

of his daily self-catheterizations to four to six times a day, but Dr. Schiff reported that he was able to void spontaneously and catheterized afterwards for a moderate to fair amount of urine. (Tr. 244). A physician assistant in Dr. Schiff's practice examined Plaintiff in November 2002, and noted that he continued to self-catheterize successfully. (Tr. 238). Plaintiff remained essentially unchanged when seen by Dr. Schiff in December 2002 and June and August 2003, although some "spontaneous voiding" was noted. (Tr. 237, 286-287, 294). Diagnostic studies for renal abnormalities were negative. (Tr. 294). Plaintiff asserts disability since June 2002. (Tr. 167). He was seen at Memorial Hospital of Rhode Island in August 2002 for complaints of pain in the first left toe. (Tr. 214-215). Examination was essentially negative, an x-ray of the toe revealed no fractures or dislocations, and Plaintiff was diagnosed with gout and released without treatment. (Tr. 214-215).

On October 30, 2002, Dr. Thomas McGunigal performed an orthopedic/physical medicine consultative exam of Plaintiff, who complained of pain in his lower back, spine, shoulders, and right knee. (Tr. 217-220). Plaintiff recounted his history of back surgery and ureter dysfunction eight years earlier. (Tr. 217). Physical examination was largely negative for joint tenderness or instability, although there was some decrease in range of motion of the joints and extremities, and Plaintiff had preserved sensation in the lumbar and cervical spines, present deep tendon reflexes, negative straight leg raising and normal gait. (Tr. 218-219).

In November 2002, Dr. Youssef Georgy, a non-examining Disability Determination Services (DDS) physician, opined that Plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently; stand, walk, and/or sit for about six hours in an eight hour workday; push/pull on a limited basis with his upper extremities; occasionally climb, balance, stoop, kneel, crouch, and

crawl; and that he should not reach overhead on a frequent basis or be exposed to extreme cold or hazards on a concentrated basis.  (Tr. 222-225).

An internist, Dr. Muhammad S. Akhtar, saw Plaintiff in November 2002 for complaints of back pain.  (Tr. 230).  Plaintiff reported the need for intermittent catheterizations.  (Tr. 230).  Initial diagnosis included arthritis and gout, (Tr. 230), and Plaintiff was referred to an orthopedist, Dr. A. Louis Mariorenzi, who examined him in January 2003; diagnosis was probable cervical strain with full recovery and chronic lower back pain.  (Tr. 232).

On March 5, 2003, Dr. Marcia Lipski, a second non-examining DDS physician, opined that Plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently; stand, walk, and/or sit for about six hours in an eight hour workday; push/pull on an unlimited basis; frequently balance; occasionally climb, stoop, kneel, crouch, crawl, and reach overhead.  (Tr. 276-279).

Dr. Steven Schechter, a colorectal surgeon, saw Plaintiff in February 2004 for complaints of constipation.  (Tr. 314-315).  Plaintiff reported the need to self-catheterize four times a day.  (Tr. 314).  Examination showed a supple neck, clear lungs, normal extremities, and a soft and non-tender abdomen with no masses or hernias.  (Tr. 315).

Plaintiff's counsel arranged a February 2004 examination by Dr. K. Nicholas Tsiongas.  (Tr. 297-303).  Physical findings included: muscle spasm and tenderness in the back; intact flexion of the waist; normal straight leg raising tests; equal deep tendon reflexes; normal muscle strength in the knees; pain in the right groin; and the ability to squat well without any complaints.  (Tr. 298-299).  Plaintiff indicated a need at that time to self-catheterize seven to eight times per day.  (Tr. 297).

-14-

Plaintiff testified that he could no longer work because he suffered from constant back and right leg pain trouble concentrating, and trouble sleeping.  (Tr. 46, 51, 52, 53, 54).  He testified that he had to catheterize himself between four and eight times per day and that the frequency and occurrence of infections had increased over time.  (Tr. 51-52).  He further testified that he was able to drive, go to the store, visit his girlfriend at her house three to four times per week, go out to eat, wash dishes, and play video games.  (Tr. 47-49, 50).

The ALJ asked the VE who was present at the hearing and who heard Plaintiff's testimony, to assume that Plaintiff could perform unskilled sedentary work that allowed for the ability to change positions between sitting and standing.  (Tr. 59-60).  The VE testified that Plaintiff could perform jobs as an inspector, small product assembler, hand packer, and hand wrapper (18,500 available positions in Southeastern Massachusetts and Rhode Island).  (Tr. 60).

### A.    The ALJ Failed to Properly Analyze the Impact of Plaintiff's Medical Need to Self-Catheterize on his RFC.

The travel of this case has been far from routine.  An initial ALJ hearing was held before ALJ Charles Bridges on March 2, 2004.  (Tr. 30-40).  ALJ Bridges posed a hypothetical to the VE which included, among several limitations, the fact that Plaintiff "has to be involved in self-catheterizations up to six times during the course of the day, and would have to be accommodated accordingly."  (Tr. 39).  Based on the hypothetical, the VE testified that there were no jobs which Plaintiff could perform.  Id.  On April 9, 2004, ALJ Bridges issued a written decision awarding benefits to Plaintiff.  (Tr. 72-76).

This did not end the case.  On June 7, 2004, the Appeals Council sua sponte set aside ALJ Bridges' decision awarding benefits and remanded the case for "additional evidence and evaluation."

-15-

(Tr. 111-114).  On remand, a second hearing was held before ALJ Atkins, and he issued a denial of benefits on February 2, 2005.  (Tr. 15-21).

Plaintiff raises a single narrow issue on appeal.  In particular, he argues that the ALJ failed to properly consider the impact of his daily need for self-catheterizations on his ability to maintain employment.  This Court agrees that the record is deficient in this respect and that remand is warranted.

ALJ Atkins determined that Plaintiff retained the RFC to perform a full range of sedentary work reduced by a need to alternate between sitting and standing.  (Tr. 21, Finding 7).  Based on this RFC, the VE testified to the existence of jobs in significant numbers in the region which Plaintiff could perform.  (Tr. 59-60).  However, on cross-examination, Plaintiff's counsel asked the VE a revised hypothetical which added the requirement of a "need to take up to four unscheduled breaks during the workday because the individual, the worker, had to go to the bathroom, and had to catheterize himself...taking at least 10-15 minutes."  (Tr. 61).  Based on this revised hypothetical, the VE testified that the individual would be precluded from performing the jobs previously identified to the ALJ.  Id.

Plaintiff's argument is simple and convincing.  Plaintiff contends that since there is ample evidence of record supporting his need to self-catheterize several times per day, the VE's opinion does not support the ALJ's non-disability finding.  Plaintiff is correct.  Plaintiff testified that he needed to self-catheterize seven to eight times per day and the ME described it as a "permanent condition."  (Tr. 57).  The record reflects that Plaintiff had increasing problems with urination due to infection and blockage due to mucous which increased the frequency of the catheterizations.  In

fact, the Appeals Council's initial decision to reverse and remand on June 7, 2004 noted that the record reflects a need for Plaintiff to self-catheterize four to eight times per day (Tr. 112), ALJ Bridges noted the need at "several" times per day (Tr. 73), and ALJ Atkins noted the frequency at four to six times per day (Tr. 18) and later at seven to eight times per day.  (Tr. 17).

Since the VE clearly testified that self-catheterization at such frequency would preclude work and the frequency is supported by the record, the ALJ's non-disability finding is not supported by substantial evidence.  On remand, the ALJ shall more fully develop the record as to the frequency and duration of Plaintiff's need to self-catheterize and the impact of that need on Plaintiff's ability to perform a full range of sedentary work.

## VI.    CONCLUSION

For the reasons stated above, I order that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 11) be DENIED and that Plaintiff's Motion for Summary Judgment (Document No. 10) be GRANTED.  Final Judgment shall enter in favor of Plaintiff reversing the decision of the Commission pursuant to sentence four of 42 U.S.C. § 405(g) and remanding this matter for additional proceedings consistent with this decision.


  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
November 16, 2006